### AITKEN v. J. B. & J. M. CORNELL CO.

(Supreme Court, Appellate Division, First Department. March 5, 1909.)

MASTER AND SERVANT (§ 278*)—ACTIONS—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

In an action for a servant's injury, caused by the breaking of a wrench which he was using to pull a heavy building beam, evidence *held* not to sustain a finding that the wrench was an unsafe appliance, or that it was furnished by defendant for the purpose for which it was used by plaintiff, so that defendant was not negligent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 958; Dec. Dig. § 278.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Appeal from Trial Term, New York County.

Action by John Aitken against the J. B. & J. M. Cornell Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles F. Brown, for appellant.

J. M. Grossman, for respondent.

INGRAHAM, J. The defendant was constructing the iron work for a building in the city of New York. The plaintiff, who was in its employ, was injured, and brought this action under the employer's liability act (chapter 600, p. 1748, of the Laws of 1902). Upon the trial the plaintiff testified that on the morning of July 13, 1905, he was working for the defendant as an iron worker in the construction of a building; that he was connecting an iron beam weighing something over three tons; that the defendant's foreman ordered him to help pull this beam in place, and he went up on the outside wall of the building, the beam having then been hoisted to its place, to connect it with a column; that the foreman stood alongside of the derrick, and the plaintiff asked him "to boom the beam out a little more"; that the foreman said he was afraid to boom it out, but told the men to pull it in; that the plaintiff had a wrench, and he affixed his wrench to the beam, and with a fellow workman commenced pulling on it to pull it in place; that while thus engaged the wrench snapped, and the plaintiff was precipitated to the floor below. One end of this beam was supported by a steel column, and the other end rested upon the wall upon which the plaintiff was standing. The wrench that the plaintiff used was made of cast steel, and was supplied to the defendant's employés for screwing up nuts on the iron work. There was evidence, that was objected to by the defendant, that the ordinary wrenches used in work of this kind were what were called "forged wrenches." I think this evidence was quite immaterial, as this wrench was not supplied by the defendant for the use to which the plaintiff put it. It was used merely for screwing up nuts on bolts to connect the iron work. A witness called for the plaintiff testified that this wrench was what was known as a "pressed wrench," and that it would not be safe to use a pressed wrench to draw a beam weighing between two and three tons. On cross-examination he testified that at the time of the accident there was a foreman named Abbott, and under him what was called a "pusher," named Joyce; that Abbott stood on the wall towards which this beam was being pulled; that the plaintiff called out to boom it out; that Abbott said he could not, and Joyce then told the plaintiff to insert the wrench and pull themselves. The wrench was inserted in a hole in the beam, two men took hold of it to pull the beam towards them, and both men fell when the wrench broke. It was proved on behalf of the defendant that the wrenches used by the men were what was called "drop forged"; that there were no cast wrenches used by the defendant, and no cast wrenches on this job; that both Abbott and Joyce were on the ground floor, below where this beam was being set.

After the parties had rested, the defendant moved to dismiss the complaint and direct a verdict for the defendant. This motion was denied, and to that the defendant excepted. The court submitted the question to the jury, stating that the claim of the plaintiff was that the wrench was an improper tool; that the law requires an employer to furnish his employés with safe tools and appliances with which to work; but that the employé is charged with the obligation of using ordinary care and prudence himself in the details of his work—and left it to the jury to say whether this wrench was a proper and safe tool for the purpose for which it was furnished to be used, and whether it was furnished to be used in the manner in which it was used. At the request of the defendant the court then charged that, if they found that the plaintiff used the wrench as testified to without direction to use it from a superior or superintendent, no negligence can be imputed to the defendant. The jury found a verdict for the plaintiff of $5,000.

The plaintiff, in his account of the accident, does not state that he was ordered to use this wrench by the superintendent, but that when he requested the superintendent to boom out the beam the latter said. that he could not, but instructed the men to pull in the beam towards them, and that he then took this wrench, inserted it in the beam, and he and the man with him both pulled on it, and, while so pulling, it broke. One witness on cross-examination said that he heard Joyce tell the men to use this wrench. Abbott was the superintendent, and in charge of this work. Joyce was on the floor below, and the man who gave this testimony was 25 feet away from the plaintiff. There is no evidence that the plaintiff used this particular wrench for the purpose under the instructions of the superintendent, but from his testimony it would appear that he selected it himself. This wrench was one that had been used by the man at work with the plaintiff. The use for which it was furnished was screwing nuts on bolts. There was no evidence that it was furnished to be used for the purpose for which the plaintiff used it. It was an ordinary piece of forged steel, and a proper appliance for the purpose for which it was furnished. There was no evidence that it was weak, or improperly made, or liable to break, and really no proper evidence that it was unsafe to use it for the purpose that these men did use it. The opinion of workmen that another kind of wrench would have been safer would not sustain this verdict, especially in view of the undisputed testimony that other wrenches had not been used for many years. The fact that Isler, who was working with the plaintiff at this beam, had used this wrench the day before in screwing nuts on bolts, is certainly no evidence to show that it was furnished for the purpose of a hook to pull in a beam. So far as appears, the plaintiff selected this method of pulling in the beam, and selected the wrench to use for that purpose. The only possible ground upon which any liability could be predicated is that Joyce told these men to use this wrench to pull the beam in; but, as before stated, he was not in charge of the work, and plaintiff does not testify that he received such direction. On the contrary, he stated that he took this wrench from his companion to put it in a beam, and two men then used it to pull the beam into place. There is no

evidence to justify a finding that this wrench was an unsafe appliance, or that it was furnished by the defendant to be used for such a purpose; and the evidence is not sufficient to sustain a finding of the defendant's negligence.

The judgment and order should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.